at all. Thank you. Whenever you are ready. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honors. Jeff Garvinkel on behalf of Appellant Tutiparini Building Corp. The facts here are not in dispute. In June of 2011, the debtor in this bankruptcy case, the developer, entered into a 99-year ground lease with the Port Authority of New York. Two years later, Tutiparini signs a construction contract to redevelop the George Washington Bridge bus station per the terms of the ground lease. That ground lease is for 99 years. The ground lease required payment of the subcontractors and contractors, specifically Tutiparini, which was the lead contractor. Tutiparini is owed $110 million. The first provision of the construction contract, which we put before the court as part of our initial filing, has Section 1.1, the lease flow down provision. 17 sections and then 60 pages of the ground lease incorporated into and assumed by Tutiparini. The mistake of the lower courts here was to view Tutiparini as a stranger or outsider to the 99-year ground lease. So would everybody who is benefited by the ground lease and by the project be in the same position as Tutiparini? Absolutely not, Your Honor. Why not? Because... According to your argument... That's not true. But the ground lease contemplated all sorts of activities going on, a number of vendors and a number of other subcontractors and so forth. Why are you different? Judge Walker, my client is the only one who entered into a written contract in which it expressly assumed and became the legal delegatee of the debtor's obligations under the ground lease. No other parties... Whatever you assume, that may be that you do that kind of thing, but don't we really have to look at the ground lease? We have to look at the ground lease itself to see whether or not your client is a third-party beneficiary. Your Honor, you don't have to go to the third-party beneficiary question. I'm sorry, that's our secondary argument. Our first argument is that under the law, following the New York Supreme Court of Appeals decision in Devlin, a 150-year-old precedent where a party assumes an obligation and becomes a delegatee of the obligation, they become a party to the underlying contract. You don't have to get the third-party beneficiary because by operation of New York State contract law, law that we all learned in our first-year contracts class, by virtue of the assumption of the obligations by my client in June of 2013, it has become a party to the ground lease. But isn't this... I mean, I think, you know, some of the cases that talk about a former landlord still having rights, I mean, that seems very distinct from this situation where there was nothing about the original at the time of the ground lease that sort of anticipated contractors subsequently being a party to that. I mean, this seems the fact that there are obligations being assumed through the contract but not through the ground lease, it seems like that makes it distinct from some of these other cases where a party is considered a delegatee or that someone who really does have a more direct connection to the contract, the ground lease or what have you at issue. Well, I think it breaks into two questions on that, Judge Lee. The first question is, is Tutteferini a party to the ground lease? And I recognize that there is these cases out there, the ones we cite, such as the child care building block case and the USN case where you had splitting of a landlord's pure claim between different owners, a current owner and a former owner. But the former owner doesn't have any continuing obligations or relationship with the debtor or the assumptor of the executory contract. Similarly, here, Tutteferini was the party who fulfilled the debtor's obligations under 60 pages of the ground lease, 60. That gave rise to a $110 million claim. Now, Tutteferini, let's say this case had not been in bankruptcy. Tutteferini would have a claim and did have a claim against the developer. It could sue under two contracts under New York law, two. It can sue under its construction contract, but it also, under New York law, the Devlin case, has standing and authority to sue under the ground lease under 5.7c. And once you reach that conclusion, that under New York contract law, it had that right of standing to sue under the contract, then the lower court's determination that Tutteferini was not a party was wrong. Right, but I think the first part of how you started your response was, let's say this wasn't in bankruptcy. It is in bankruptcy, and given that there are rules about how and who should be able to recover, your interpretation of this statute, it doesn't seem consistent with the bankruptcy code's sort of policy for how these things are paid out. The fact that this, that Tutteferini, as an unsecured creditor, is going to get this benefit that is not typically wanted in the bankruptcy context. And let me address that in two ways. First, as Judge Rakoff acknowledged on, I think it's page 13 of his decision, this rule about secured creditors get paid first, unsecured creditors get paid second, is subject to an exception by virtue of 365 and the CURE requirements. Second, the bankruptcy code requires equality of distribution of similarly situated creditors. And if you look at the jurisprudence in bankruptcy, that is the rule, similarly situated creditors. Tutteferini is the only creditor who assumed the obligations under the groundings, so we're not being treated unfairly under the preambles of the bankruptcy code, the guiding principles. 365 requires payment of a CURE amount and compensation for the loss that the non-debtor party, and that's the language in the statute, suffers by virtue of the debtor's breach. Here the debtor breached by not paying $110 million to Tutteferini. That is what was required if there's to be value realized for the secured creditor and other parties. All of them contracted or dealt with the debtor in a way that they are subject to Tutteferini's rights under the groundings. And again, I go back to the fundamental point here that we're trying to— So you're saying that if the same assumption language had been included in other contracts, then that would be—then they would have a right back against the portafolio. Yes, but in this case, the only party that assumed was Tutteferini. Well, if we ruled in your way, I guess all of the various entities that are named in 57C would get such language into their contracts. Contractors, subcontractors, material men and workmen, all claims lawfully made against it by other third persons, etc., etc. And doesn't that just abandon the entire bankruptcy scheme? No, Your Honor. First, no creditor filed a claim like that. The claim is barred and has long since passed. Number two, to go back to Judge— I'm thinking about the legal landscape in the future. Yeah. Judge, you'd have to be a named beneficiary. Well, a named beneficiary of the ground lease, we know, are—they're spelled out in 776, 65.7. I'm not saying a third-party beneficiary, but the named people there are contractors, subcontractors, material men, and so forth. And you'd have to have assumed those obligations by way of a separate contract, which Tutteferini did. My point is, if they did, if this—if we were to rule in your favor, that would be the precedent. We have to look at it from that perspective as well. And that's what the statute requires, Your Honor. If there's a third party that has rights under the contract that gives right to a cure rate or a compensation right, that's what the statute reads. And it was improper for the lower courts to read that requirement out of the statute. The plain language controls. And again, going to Justice Lee's question, and I see my time is up, I just want to make one point. The Supreme Court has repeatedly, in Butner and Illinois, in Raleigh v. Illinois, to determine the rights of a bankruptcy—of a party in a bankruptcy statute. We look to state law. What is the state law contract right? That's Butner, and that's the Raleigh case. We've cited both in our briefs. In this case, the New York state law is clear. Under the Devlin case and restatement of contracts, Tutta Parini is the assumptor and delegatee and has the right to assert the cure right. And this was the error that the lower courts made in concluding that Tutta Parini was not a party to the groundless. What I'm struggling with in the Devlin, and I don't want to—Devlin was about the assignee assuming the right to sue the person with whom the assignor had an obligation. You're invoking it to say the assignee acquires a right against the assignor that's distinct from the contractual arrangement between the assignor and the assignee. And that's why I'm finding—I'm finding Devlin right on point. It isn't right on point. We look for a case like this around the country or in New York, and we were unable to find one. But Devlin is—the point that I'm making is Devlin recognizes, and if it's a question as to whether what New York law would allow here, then perhaps it should go to the New York Court of Appeals for a certified question as to whether that gives right of Tutta Parini standing. Because once it has standing to sue under the ground lease, then it automatically gets the 365 pure rights, and it's entitled to be paid if the debtor wants to sell that lease and realize value for that lease. Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Anthony Acampora from Silverman Acampora. We're counsel to Appellee Kenneth Silverman. Mr. Silverman is the Chapter 7 trustee of George Washington Bridge Bus Station Development Venture. It appears the Court is very well versed with Tutta Parini's arguments and I assume with many of mine, so I won't repeat them. But there are several points I'd like to make based upon the questions that the Court asked this morning. Judge Lee, you are 100 percent correct that none of these agreements anticipate the general contractor, either in the abstract or when Tutta Parini came along, to become a party to the ground lease. Now, what's interesting is counsel keeps saying there's rights to the ground lease. If we weren't in bankruptcy, there's rights to the ground lease. Well, they sued the debtor under the ground lease, under the construction contract, and won. They sued the port authority under the ground lease, under the construction contract, I'm sorry, and lost because they didn't have privity. Now, if what counsel came up here and told you this morning was true, they would have arbitrated against both the debtor and the port authority under both the ground lease and the construction contract. And that never happened. And the reason that never happened is there are no rights under the ground lease for this debtor. Counsel uses the phrase, we assumed we're a delegatee, we're an assignee. Judge Robinson, you're right about Devlin. That's people who actually have rights under an agreement who've been given rights enforcing those rights. What counsel really means to say when he says that they assumed the obligations of the debtor is they were hired by the debtor. They were hired by the debtor to do construction, just like somebody could be hired to do windows, just like someone— I'm sorry. I'm sorry. Just like someone could be hired to do lawn maintenance. They didn't get any rights because they were performing services simply because, for the convenience of the parties, 60 pages of detail of what the debtor's responsibility was vis-a-vis construction got appended to the construction contract. Judge Robinson, you have a question? Yeah, I'm sorry to have to interrupt you there. Can you help me? I'm struggling a little bit with the breadth of the language in 365. Sure. And the absence of any specification of who can ask for this cure. And is there some other provision in the code that I look to for that? This may be a little bit of a walk. The answer is there's no provision in the code that you can look to to get that information. But I think, again, it was you, Your Honor, who said, but it's kind of not the way bankruptcy works. 507 is the Waterfall Provisions in the Bankruptcy Code. It provides how creditors get paid and in what order. If you accept what Tutta Perini is telling you and what Judge Chapman and Judge Rakoff rejected, if you accept Tutta Perini, then Congress somehow, for Section 365, decided to jettison and abandon the Waterfall in all circumstances. And I think it was you, Judge Walker, who said this is basically a free-for-all. Everybody can assert a claim. What counsel is really arguing is because there's no limitation, anyone can assert a 365 claim. The problem with that argument, Judge Robinson, is 365 has one other requirement that gets ignored in this case. The only way you can assert a 365 claim is if there's a default in the contract that's being assigned, the executory contract being assigned. Tutta Perini can't point to a default in the ground lease because you would imagine that in a project of this magnitude that you would have needed to have included the Port Authority in this quotation mark assignment or assumption. The Port Authority stated quite simply is the one writing the checks, and its provision 507 in the ground lease says once the Port Authority pays for this construction, it's the debtor's obligation to make the payment. So when you look at the language of both of these agreements, they're apart. There's never a – I was thinking about it on the way in. There's never a joinder or some other document where all of the parties to this contract, these contracts, separate contracts, agree, well, yes, Tutta Perini, you have rights under the ground lease. Well, but I gather the theory is that the ground lease says you, developer slash debtor, are responsible for paying Tutta Perini and any other contractors, and that's the provision that's essentially in default and needs to be cured. But that default – thank you – that default runs to Port Authority. That default doesn't run to Tutta Perini. Right. I know – I 100 percent understand that. Part of what I was trying to figure out if there – I get the sort of policy and common sense aspect of the argument. I was wondering if there was a statutory provision or even a case that – where somebody else has tried to make this argument in court has responded in the way that you're describing. What's interesting is Tutta Perini has decided a single case that supports its position. There's nothing that says because there's no restriction on 365, anybody can bring a claim. And I think when you look at – you look at the argument critically, if they have – if anybody can bring a claim, just because anybody can bring a claim, and I've done bankruptcy for quite a long time, people file claims all the time. That doesn't mean they actually have a claim. It doesn't mean a court can expunge it. Now, I know Judge Chapman found they had no standing. I know Judge Rakoff found they had no standing. But practically they found they had no standing because at the end of the day, there was no default under a contract that they had any rights under. And, again, they're not any different than any other person that any tenant hires to do work in connection with a lease. Maintenance people, cleaning people, those people don't automatically – even if you took the provisions of the lease that said, this is what the maintenance is supposed to look like, and appended it to that contract, the landlord, for all intents and purposes, the Port Authority, was never included in that. And, again, counsel never actually sued on those issues. They sued under the ground lease. They sued under the construction contract and did not try to sue ever under the ground lease. So this is a very new argument in bankruptcy. And the reason it's a new argument is because it's the only way they get into – the – I mean, when you look at what Judge Rakoff says, and I think the Court's already hung its hat on it a little bit or is familiar with it is, you can't – this position doesn't justify a cure claim that would so broaden 365b1a as to allow any unsecured creditor to assert such a claim. Now, it leads – counsel says in its reply brief that our position that you can't file the 365 claim is an absurd result that goes contrary to the statute. But, again, Judge Lee, when you talk about the waterfall provisions, Congress never – Congress did say when the secure – under 365, when there's a cure claim, well, all of these – this discrete level has to get paid. The administrative claims for a default have to get paid. It doesn't say it's out the window. And that leads me, I think, to my final point, which is you do have an issue of mootness here. The sale's already taken place. It's a year and change old. This Court and the district court can't undo the sale order and pull us all the way back to the point before the sale takes place, before the assignment takes place. And I think the thing that I'd like the Court to understand, and I don't think it comes out in the papers, is assuming you could unscramble the egg, put the shell back together, put all the parties who've been involved in this transaction for the last year back in their own place, Tutor Perini gets nothing in the bankruptcy. They have a cure claim. They have a cure claim of $113 million. Port Authority has a cure claim. This property, this transfer took place for $8.5 million of payment of administrative expenses. I'm going to say a total of about $30 million in assumption of debt. The overbid protection for this sale was $45 million. No one else bid. So what I'm getting to is at the point where Tutor Perini has a cure claim, the lease becomes valueless because in order to make the transfer, someone's going to have to pay about $150 or $160 million. And at that point, the debtor and or a trustee reject the lease. The Port Authority finds another tenant or enters into the same agreement with the current buyer. And this is an asset. This is already an administratively insolvent case. Tutor Perini could take over the lease itself. Tutor Perini would. It could be the bidder. It could be the bidder, but it didn't bid at the auction. And my point is at some point, this cure claim renders this lease valueless. So we can go through all of these hoops, but at the end of this case, there's nothing there. Unless the court has any questions, I will cede the podium. Thank you. Thank you. I'll be quick, Your Honor. First, on the mootness issue. This issue came up in the child care case that we cited by the Ninth Circuit bat, where the reverse for the failure to pay the prior tenant, and the court remanded with instructions to pay the cure or don't take the lease. So second, the issue of mootness is one that's pending at the Supreme Court on a 363 issue. I don't know if the court's familiar with this. The Supreme Court just had opening briefing in the Mall of America case, which in the district court on a separate appeal of the sale order, state that case pending the outcome of the Mall of America decision by the Supreme Court on this year's docket. Second, counsel made a statement that Tudiprede did not sue under the ground lease. That is incorrect. Tudiprede sued both the debtor and the port authority under the ground lease. Is that in the record one way or the other so we can just check ourselves? We can supplement the record. I don't know if it's in the record, Your Honor, but the New York Appellate Division said we could, my co-counsel who's doing that is with me, said we could proceed under an unjust enrichment theory. That case is now on appeal going to the New York state system. I'm not involved in that, so I can't really speak to that, but we're happy to supplement the record in that regard. Thank you, Your Honor. Thank you. Thank you both. Thank you. And we'll take the matter under advisement.